IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Randall Edwin Latimer, #135007, aka Randall E. Latimer<br><br>             Plaintiff,<br><br>vs.<br><br>Bill Byers, Michael McCall, R.L. Turner, W. Byrd, T. Teeham, W. Golden, Ofc. Ketchie, Officer Duffy, Denise Williams, Amy Enloe<br><br>             Defendants. | Civil Action No. 6:11-3259-JFA-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 88) and the plaintiff's motions for summary judgment (docs. 15 and 37). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff is an inmate of the South Carolina Department of Corrections ("SCDC"). His allegations here arise from his incarceration at SCDC's Perry Correctional Institution in 2008. The defendant Bill Byers is the current Director of SCDC,[1] while the

---

[1] Plaintiff admits that Mr. Byers was not serving as Director of SCDC at the time of the alleged incident and that he meant to name former Director Jon Ozmint. Because the plaintiff has failed to establish any cause of action against the Director of SCDC, whether Byers or Ozmint, his pleading error is of no consequence.

remaining defendants were SCDC employees working at Perry at the time of the alleged incident.

The plaintiff alleges violations of his civil rights to be free from excessive force and medical indifference, as guaranteed by the Eighth Amendment to the United States Constitution. He also alleges that his rights were violated in the grievance process and that he was denied due process at a resulting disciplinary hearing. He seeks monetary damages and the injunctive relief of a transfer from Perry[2] (comp. at 13).

The plaintiff filed motions for summary judgment on January 19, 2012, which was prior to service of the complaint on the defendants, and March 7, 2012. On May 22, 2012, the defendants filed a motion for summary judgment. By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition to the defendants' motion on June 19, 2012.

## **FACTS PRESENTED**

The parties are in agreement on some of the underlying facts: On October 6, 2008, the plaintiff was placed in a holding cell after becoming angry about being unable to see his mental health counselor. He was banging on the door and cursing in a loud tone. Captain Byrd directed the plaintiff to calm down, and when he failed to do so, to then turn around to be handcuffed. The plaintiff failed to comply, and he was sprayed with chemical munitions. He then complied and was handcuffed, and then escorted to his cell in the Special Management Unit ("SMU"). Once in his cell, he was able to wash his face with water. A disciplinary hearing was later held, and he was found guilty for his conduct during the incident.

---

[2]Plaintiff has since been transferred to SCDC's McCormick Correctional Institution.

The parties' remaining factual allegations are in contrast. The plaintiff claims that when he was ordered to turn around to be handcuffed, he was about to comply by first attempting to remove his jacket (comp., p. 4). However, Captain Byrd reports that the plaintiff moved as if to spit on him, and Officer Teehan reports that the plaintiff took a fighting stance (Byrd aff. ¶ 4; incident report, p. 9, doc. 88-4). The plaintiff also alleges that Captain Byrd "punched me in the eye" after he was handcuffed, placed the handcuffs on "extremely tight," and along with Officer Teehan, "forced my hands up over the back of my head all the way from the holding cell" back to his cell, a prisoner-control move referred to by the plaintiff as the "chicken wing" (comp., p. 5). The defendants deny that the plaintiff was struck after he was handcuffed or that he was otherwise improperly escorted back to his cell. While the plaintiff claims he was denied true medical assistance after the incident, the defendants contend that he did indeed receive medical attention after returning to his cell and on follow-up visits to the medical unit. The plaintiff further alleges that Warden McCall violated his rights in denying his grievance, which the defendants deny. Finally, the plaintiff claims that the resulting disciplinary hearing was a sham and the resulting finding of guilt was unsupported by the evidence and without sufficient explanation. The defendants deny those allegations and point to the hearing officer's report itself and the referenced submissions as proof that the plaintiff's conviction was properly considered and reported.

The plaintiff filed a Step 1 grievance after the incident, which was denied on December 5, 2008 (doc. 1-2, pp. 1 and 2). The record before the court is unclear whether the plaintiff appealed the denial; other grievances are attached to the complaint, but these appear unrelated to the initial grievance. For limitations purposes, the plaintiff timely filed his complaint with this court on or about November 28, 2011, before the three-year period had run after his grievance was denied.

3

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will

4

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

*Excessive Force*

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the United States Supreme Court held that whether the prison disturbance is a riot or a lesser disruption, corrections officers are required to balance the need to restore discipline through the use of force against the risk of injury to inmates. The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7.

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) The need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the absence of serious injury. *Williams*, 77 F.3d at 762 (citing *Hudson*, 503 U.S. at 7). In *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010), the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Id.* at 1177-78 (citing

5

*Hudson*, 503 U.S. at 4). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 1178 (quoting *Hudson*, 503 U.S. at 7).

"[A]lthough it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells," the Fourth Circuit has observed that "it is necessary to examine the totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Williams*, 77 F.3d at 763 (internal quotation marks omitted). "[M]ace can be constitutionally used in small quantities to 'prevent riots and escapes' or to control a 'recalcitrant inmate.'" *Id.* (quoting *Landman v. Peyton*, 370 F.2d 125, 138 & n.2 (4th Cir. 1966)). "A limited application of mace may be 'much more humane and effective than a flesh to flesh confrontation with an inmate.'" *Id.* (quoting *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984)).

The plaintiff alleges that Captain Byrd used excessive force when he sprayed him with chemical munitions. As argued by the defendants, the evidence before the court shows the officer's use of his spray, both in self defense and to restore order, hardly represents an assault carried out maliciously and sadistically. The plaintiff admits that he was banging on the cell door and cursing when Captain Byrd and Officer Teehan told him to turn around to be handcuffed. While the plaintiff explains that his failure to comply resulted from his intent to first remove his jacket before being handcuffed, the uncontested fact remains that he did not comply as directed. Faced with the plaintiff's belligerence, the officers were justified in giving a corrective instruction, and to use the spray when the instruction was ignored. The justification is all the more apparent given the perception of Captain Byrd that the plaintiff was positioning to spit on him.

Notably, the plaintiff makes no allegations that he was gassed for an unnecessarily lengthy time. Rather, he states that after the mace was administered, he complied with the instruction to turn around and be handcuffed. It is well-settled that prison officials may use mace to compel the obedience of a recalcitrant inmate; provided that the quantity used is commensurate with the gravity of the situation, "gassing is not violative of constitutional rights." *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984).

The plaintiff's complaints of being handcuffed too tightly and taken to his cell by Captain Byrd and Officer Teehan using the "chicken wing" hold are likewise insufficient to give rise to a constitutional claim. The use of physical restraints are to be expected in a custodial setting, particular when an inmate exhibits disobedience and threatening behavior. Given his own admitted recalcitrance, the plaintiff was justifiably temporarily restrained so that the officers could gain control over him. A review of the medical records reveals that the plaintiff was seen in his cell by medical staff on the same day after the incident occurred (medical summary encounter # 334), complaining of a sore arm from being restrained, but with no signs of bruising or bleeding (doc. 88-3, p. 7). The records further show a follow-up encounter (# 335) with the medical staff a few days later, and a mental health visit (#337) the next week. These records are silent as to any complaints from the plaintiff, nor any signs of injury. The next medical encounters (# 338 and 339) note the plaintiff's complaints of wrist and back pain, and his attribution of it to his being restrained on October 6th, but the medical findings in these entries do not describe any serious injury, nor draw any direct association of the plaintiff's reported discomfort to the incident (doc. 88-3, p. 6). The plaintiff simply has failed to show that these restraints were maliciously and sadistically applied, and, as such, he cannot maintain his claim of excessive force here.

The plaintiff also alleges in a single sentence in his complaint that after being handcuffed, he was punched by Captain Byrd: "I was cuffed by Defendant W. Byrd who

7

then punched me in the eye..." (comp. p. 5). In his answer and in his affidavit in support of summary judgment, Captain Byrd denies the allegation. Despite the opportunity to do so in his lengthy response in opposition to summary judgment, the plaintiff has failed to challenge Captain Byrd's denial on this particular issue, and indeed has not again mentioned the purported punch throughout this case. The court has reviewed the medical records submitted in the case, and none contain a report by the plaintiff of sustaining a punch, nor any observation by the medical staff of associated bruising to the eye. Given the plaintiff's apparent abandonment of this allegation, along with the complete absence in the medical records of its substantiation, his initial claim that he was punched after being handcuffed is insufficient to overcome summary judgment. Based upon the foregoing, the plaintiff has failed to show that excessive force was used against him in violation of his constitutional rights.

To the extent the plaintiff seeks to hold the former Director Byers and Warden McCall liable in their supervisory capacity for excessive force, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). In any event, nothing in the record establishes that either official knew that the incident would occur or could have done anything to prevent it. Accordingly, any claim of supervisory liability must fail.

The plaintiff names Officer Duffy as a defendant, but makes only allegations that she provoked him by speaking to him (comp., p. 4). Obviously, the plaintiff has failed to make out an excessive force claim against this officer.

*Medical Indifference*

The plaintiff also complains that defendants Denise Williams and Amy Enloe, both nurses at Perry, denied him appropriate medical attention for the injuries he claims to have suffered during the October 6th incident. He further claims that both nurses gave false reports regarding the seriousness of his injuries (comp., p. 8). "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106. In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* "Deliberate indifference may

be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Based on the medical records before the court, some of which are recited by the plaintiff in his complaint, it is clear that adequate medical attention was provided to the plaintiff and that his injuries, if any, were not serious in nature. As referenced above, the plaintiff was seen by Nurse Williams in his cell the same day following the incident and was advised to continue to wash his eyes in his cell so as to eliminate the mace. Her examination of the plaintiff revealed no bruising or bleeding from the restraints. She advised the plaintiff to sign up for sick call if needed. Nurse Enloe signed off on the report the following day (medical summary encounter # 334). As shown by subsequent medical entries, the plaintiff was provided follow-up visits with the medical unit through the end of the month (doc. 88-3, pp. 6-7), and he did not relate his alleged injuries or their purported cause until his visit to the medical staff on October 23rd, more than two weeks after the incident. He was prescribed mild pain medication at that time. The court has also reviewed the medical staff's entries for November and December 2008 (medical summary encounters # 340 - 342), which mention nothing about any ongoing issues associated with the brief macing or temporary restraint of the plaintiff on October 6th.

The plaintiff further alleges that Nurse Williams and Nurse Enloe deliberately prepared a false medical record of his October 6th examination by Nurse Williams, offering only that the October 6th report does not compare to the October 27th report describing his

10

pain (# 339). However, he offers nothing but his own suspicion to justify this charge. The October 6th report noted no bruising or bleeding, and the October 27th report likewise says nothing about such injuries. Even if some residual soreness or pain was noted on the latter report, it certainly does not establish that the nurses submitted a fraudulent initial report. Based upon the foregoing, the plaintiff's medical indifference claim fails. *See Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) ("In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.").

*Grievance*

The plaintiff alleges claims against Warden McCall for denying his grievance over the incident. Warden McCall rejected the grievance, citing Captain Byrd's report of the plaintiff's conduct (doc. 1-2, pp. 1-2). The plaintiff's allegations do not give rise to any constitutional deprivation. First, "there is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Second, the plaintiff's allegations that the Warden McCall did not follow proper procedure in arriving at his decision on the grievance, standing alone, does not amount to a constitutional violation. *See Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison procedures that fail to reach the level of a constitutional violation are not actionable under § 1983). Accordingly, the claim fails.

*Due Process*

The plaintiff contends that disciplinary hearing officer R.L. Turner violated his right to due process by convicting him of threatening or assaulting an employee without sufficient evidence and by failing to adequately explain his decision. He also apparently accuses Captain Byrd and Officers Teehan, Golden, and Ketchie of providing false

11

information to the hearing officer by way of their incident reports. These claims are without merit. A decision made by a disciplinary hearing officer is consistent with an inmate's procedural due process rights as long as "there is any evidence in the record that could support the conclusion reached" by the hearing officer. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 4555-56 (1985). A review of the disciplinary hearing report (doc. 88-4, p. 4) shows that the hearing officer expressly relied on each officer's incident report in making his determination. These reports (doc. 88-4, pp. 5-9) are consistent in describing the plaintiff as noncompliant and aggressive, and Captain Byrd and Officer Teehan reported threatening conduct by the plaintiff. The plaintiff provides nothing more than his own unfounded accusations that the reports are false, which is insufficient to maintain his case beyond summary judgment. Moreover, the written report issued by the hearing officer (and signed as received by the plaintiff), adequately recites the basis for the conviction and meets the due process requirement of a written statement of the evidence upon which the hearing officer relied. *See Wolff v. McDonnell*, 418 U.S. 539 (1974).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 88) be granted and the plaintiff's motions for summary judgment (docs. 15 and 37) be denied.

s/Kevin F. McDonald<br>
United States Magistrate Judge

July 20, 2012<br>
Greenville, South Carolina

12

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.